The last case this morning is Reynolds v. Union Pacific Railroad Co. 412-1001. For the appellant is John Papa. You are he, sir? Pronounced correctly? Yes. And for the appellee, Thomas Jones, you are he, sir? Yes, sir. Okay, thank you. Mr. Papa, you may proceed, sir. May I please record? Council. Mr. Jones. Good morning, your honors. As the court is well aware, in this type of an FELA case, this court is authorized and directed to apply federal substantive law to the facts and circumstances presented to it. The most recent review of the status of federal substantive law relative to these types of issues of notice and foreseeability are found in two cases out of the Northern District of Illinois. In 2009, the year after this episode occurred in 2008, Judge Robert Dow rendered the decision in Garrity v. Metric. That opinion is noteworthy for its thoroughness of the judge's analysis and the clarity of the judge's reason. Within the decision, Justice Dow or Judge Dow determined that it was worthwhile to quote Justice Cardozo that danger invites rescue. Judge Dow interpolates from that and says hazards invite precautions. Really, that's what we're looking at in a case like this. Judge Dow acknowledged in that case that when a defect is hidden from view, the potential for harm is less favorable or less foreseeable. And that's really what the defense says. We had no way of knowing that this condition existed. It was a hidden defect. However, the judge continues that when the circumstances that create the potential for harm are in plain view, foreseeability and the standard applicable to it is more easily relaxed. Counsel, that brings me to the question I've just been looking forward to this argument so that I could ask. Do we even know that this so-called defect existed or exists? From the testimony of the plaintiff and the corroborating testimony that something was witnessed by Mr. Schultz, the maintenance of way director who was at the location when Mr. Reynolds suffered his injury, Mr. Reynolds described he sensed he stepped into a depression, defect or a hole. Mr. Schultz corroborated that he thought he saw him slip. So something did happen that was not accounted or respected by either of these individuals. And after that, they were unable to photograph this hole, defect, depression, and even, I'm assuming to this day, no one's ever seen it. That's correct. No question about that. How does that affect the foreseeability? I mean, how can you be charged with foreseeing something that you can't even establish exists? Because if, in fact, the railroad was aware of the conditions that led to the development of this defect, and we believe in this case the evidence is clear from the railroad's own expert, if you will, the maintenance of way director and the train management officer for the Bloomington Yard, they knew for over a year, well over a year before this incident happened, that the area of the yard where this incident occurred was prone to accumulate water and flood. And they had conditions that had been reported to them by members of the working crews in the yard and by a union representative who actually visited the site with the management of the railroad and pointed out defects in the walkway surfaces and defects in the roadbed surfaces for the rails. Mr. Schultz pointed out in his testimony that for over a year the railroad was having problems with rails breaking in the southern part of this yard. And he surmised that that was likely due to the fact that the water standing between the rails and in the walkways between the tracks themselves that were used by the rail workers would accumulate water. They would in periods of cold weather, and this was in December, December 18th, the freezing and thawing mechanism that takes place in cold weather would cause the ground to shift or move and create a condition where when a train would go over a rail and there was no ground to support it, the rail would fracture. Likewise, he said that that same process causes defects, depressions, and holes to form in the walkway surfaces. And this was known to the railroad. But what Mr. Schultz also pointed out in his testimony was that the railroad had engaged in no maintenance in spite of the complaints that were made, complaints that were in writing and oral. They engaged in no policy to inspect and maintain the tracks and the walkways in this area. They just didn't have the funds to do it. He was a one-man operation in Bloomington, responsible for the Bloomington yard and miles of track in either direction owned by the railroad. Now, counsel, let me ask you this. You talk about Schultz saying that this could cause depressions, defects, holes, but wasn't that his response to a leading question by counsel that said, isn't it true that could cause? And he said, it could. Isn't that how that came in? Well, that is how it came in, but it's been the record. And then, sure, you're right. And then the problems with the yard, which I think everyone would agree there were problems with the yard. But if you can't show that this alleged defect actually existed, how can you attribute it to those problems in the yard? Well, I would suggest that the court also read the decision in 2012 in Scott v. BNSF, again from the Northern District. In that case, a gentleman was working with a derailleur, and he had adjusted the derailleur to allow a train to pass over it and then was going back to set the derailleur when the spikes came loose from the tie. And he indicated that there was no way for him to know that that was going to happen, and he didn't think anyone would be able to tell that the holes that the spikes were in had gotten larger than they should have to allow for this to occur. Judge Grady in that case indicated that because there was also testimony that the ties themselves appeared to be defective, worn, had problems over the past, and were not attended to, that it was reasonable for the case to go to the jury and let the jury determine whether it was foreseeable that these tie plates could have come loose because of the condition of the ties themselves. So in that case, the actual mechanism for causing the defect was invisible. But because of the circumstances and the conditions in the vicinity of, in the time of the accident, the court acknowledged that it's a jury question and should not be taken away from the jury. When this happened on the morning of December 18, 2008, the incident in this case, there's a lot of snow on the ground? Three to four inches, I believe, Your Honor. Okay. And they're walking around the rail yard? Yes. And your client slipped and wrenched his knee? Is that what had happened? That's the testimony, Your Honor. If he slipped and wrenched his knee because of snow, would the railroad be liable? Potentially. And the railroad is obligated to provide him with a reasonably safe place to work. They have rules that say that they're supposed to provide protection against snow and ice and make sure that the walkway surfaces are free from any defects or ice and snow. So they have to clear the snow away from a railroad yard and if a worker slips on snow and they haven't done that, they're liable? They can be, yes. I don't understand. They can be. I'm asking you, are they? And if he can't answer the question that they are, explain why not. Because I believe it's a factual question that should be determined by the jury. Well, I told you he slipped on the snow. Okay? He slipped on the snow. Is it the fact that they didn't clear the snow away rendered the railroad liable? I believe it can and I believe the law would require them to address that if they have the opportunity to do it. So they have to plow a railroad yard from four inches of snow before they can let their workers walk upon it? If it can be foreseen that workers are going to work in a particular area and that area is rendered hazardous by snow or some other condition, yes, they must address that. But they don't have to clear the whole yard. They don't expect that workers are going to be in the whole yard. The reason that in this particular instance Mr. Reynolds was at the location where he was is that a rail had broken because of what we believe were the conditions of the yard preexisting this incident. And he was there with the maintenance of way director inspecting the rail to see whether they could put a train across it. Otherwise, he wouldn't necessarily have had to gotten off the train except to throw the switch. But he was there for another purpose. So they said, we want you to go check the switch near tracks and the exit switch near tracks 12 and 13. They have to plow that area before they can have them walk and inspect it? I don't believe they have to plow it necessarily, Judge. But depending on the amount of snow, they might have to plow. But if there's snow that can be resolved or taken care of by means of salt or sand or some other mechanism, yes. They're obligated to provide a reasonably safe place to work. So their duty is to be reasonable in what they're doing. Whether that means they have to plow, whether that means they should salt or sand, it depends upon one's interpretation of reasonable. But our position is that's for the jury to determine what is reasonable, not the trial court. Is it correct that your client and his associate couldn't find the hole after the accident that you're claiming he stepped into? I don't believe they actually went to look for the hole, Your Honor. They just took pictures of the area where it occurred. What does that mean? That they didn't go to look for the hole. Well, if you're taking a picture of an area, how far away are you from it? Was this a long-distance shot? It doesn't appear to be, Your Honor. It's a shot of the area around the switch and around the broken rail. And they did that to memorialize its condition? To memorialize the location. On the day the accident occurred? The day or the day after, but I believe it was the day of. Didn't anyone walk around and go try to find out what this hole was? No one did that? Apparently not, Your Honor. Now, it seems to me, Counsel, if I thought I tripped over something, there was a defect someplace, a hole, bad curb or whatever, and we got injured. And I'm going back to take a picture. I'd want to check and say, yeah, there's the hole. They didn't do that? They did not do that, Your Honor. He continued to work, brought his ship, and did not go in that direction. But when they went back to take pictures, they didn't go back and try to find the hole specifically? No, they took the pictures and went back to their work. Did the pictures show any hole? The pictures do not appear to show anything beneath the snow. All you can see is the snow and the footprints in the snow. Well, from the evidence before the court, is there any reason to believe that he tripped on anything other than slipped on snow? Well, he didn't describe slipping, Judge. He described stepping and felt his foot shift because of a defect or a hole, not because he slipped on the snow. He was wearing ice cleats to prevent slipping on ice or snow. Shouldn't it be visible after the fact? This is a strange sort of case, Counsel, in that I've seen lots of cases where we've had reports of injuries, and the question is should you have known about this hole afterwards? But this is the first time where I can recall hearing about a case where someone trips allegedly in a hole and they couldn't find it afterwards. Forget about beforehand. I understand, but the railroad should not be allowed to hide under the blanket of snow. The railroad didn't take any steps to verify or not verify what was reported to them, and Mr. Reynolds did in fact report that he stepped in what he thought was a defect or a hole in his accident report after he had completed his shift. And apparently the railroad conducted no investigations as to whether there was or was not a hole. We do know that for at least a year before this incident, reports were being made for the area of the yard where this incident occurred that defects, depressions, and holes were existing in the walkway areas and that rails were breaking monthly because of the subsurface condition of the ground. Reports of defects and holes or reports of standing water and having to walk in mud? I believe that there were reports made, Your Honor, about deficiencies in the walkway surfaces, not just water and not just mud. But holes, the deficiencies, what were the deficiencies reported? What was asked was that they resurface the walk surface to make it level and appropriate to walk on without having any changes in holes or defects, deficiencies in the walkway surfaces. The crux of this case, Your Honors, is the fact that these conditions were created by the inactivity of the railroad to resolve them because of the railroad's inactivity to resolve those conditions. This requires, then, the court to allow the jury to determine whether the steps taken by the railroad were appropriate or not, whether they were reasonable or not, and the jury should be allowed to determine whether it was foreseeable that an injury of this kind could have happened given the known preexisting conditions of the yard. In most of the cases that have resolved these issues against the working individual in an FBLA case, you'll find that the courts had to rely upon only the testimony of the plaintiff to establish what the conditions may have been and how long they may have existed. In this case, in addition to Mr. Reynolds' testimony about what he perceived to be the condition of the yard underneath the snow, the conditions about the condition of this yard beforehand were well established through Mr. Schultz's deposition and through Mr. Rutledge's deposition. And I would cite to the court to look about what Mr., and obviously the court has read through Mr. Schultz's testimony, but at pages 130 to 131 of this record and 140 in this record, you will find how Mr. Schultz describes that he was aware of these conditions in the yard and that the railroad took absolutely no steps in the year leading up to this incident to correct those problems or deficiencies at all. They allowed this condition to persist. They exposed their workers to the hazards that were known to exist because of these conditions, and now they wish to hide behind this blanket of snow. I agree with what you've just said, but that doesn't really answer the question about what exact defect caused your client to be injured. Judge, I think we can only go under the circumstances that we have before us with the testimony from Mr. Schultz. Well, if one would imagine a block, city block, with a sidewalk running from one end of the block to the other, and the sidewalk is completely smooth except for maybe one panel of the sidewalk where the concrete has failed and there is a hole or a dangerous situation. But if you can't, if you fall on the sidewalk and you can't pinpoint where you fell because of that defect in the one square of the sidewalk that went bad, how can you prevent it? It's not like it was unknown the location where this happened. That was clearly a step. But was a defect ever found in that location? I don't believe it was ever looked for after the fact. We believe that defects in that precise location, in that area, around the 1213 switch, existed prior to this and were reported to the railroad. The railroad took no steps to resolve those defects at all, nothing. And that gets us to the concept of active negligence that is mentioned in some of the decisions. Under the concept of active negligence, if the railroad created the hazard and allowed it to exist, there is no need to show notice and foreseeability is really not much of an issue either. We believe that this is a case of active negligence on the part of the railroad because they knew about the substandard conditions of this yard in the area where this incident occurred and yet they did nothing to address it. Beyond that, that to me suggests a factual question that should be decided by the jury, should not be decided by the trial court. And that's really why we've asked this court to consider this matter. Thank you, counsel. Your time is up. You'll have the opportunity to address this again in rebuttal. Thank you, Your Honor. Mr. Jotz. Good morning. First of all, I want to correct some, I think, misstatements about the record here. First of all, Mr. Popper represented that the railroad did no investigation, which is totally untrue. And this is what you'll see in the record. And I actually took Mr. Reynolds' deposition. Because of the railroad's investigation, I was curious as to what he was referring to as a hole. And so I asked Mr. Reynolds in his deposition, which is part of this record, I said, Sir, first of all, you said that you brought a camera to work to document this hole. And he said, yes. And he said he sent his locomotive engineer out there to the location to take photographs. I said, why have those photographs not been produced to the railroad? He says, because they do not show a hole. So what I did, the railroad, by their investigation, when he reported this incident, on the day of the accident, they went out and they took photographs of this area. And the photographs of the area do not show a hole. And you have, in the record, photographs identified by Mr. Reynolds, where I asked Mr. Reynolds, quote, circle, mark, where it is that you found. Which he did. He marked, I think, four or five different photographs marked exactly where he claimed that he found. And I asked Mr. Reynolds, tell me, sir, do you see a hole there? No. Did you see a hole there before him? No. Did you see a hole there afterwards? No. And as we all know, snow melts. This man works in this yard. Where is there any effort at any time, when the snow melted, is there any time where they go out and they show that there is a hole in this location? There is absolutely none. So what's your theory as to why he tripped? Sir, actually, we don't know, because really, what he says in his deposition, and this is something that he kind of wavered on, but he says that he didn't slip. He did not trip. He says that as he stepped, his knee turns, and he had the sensation, he had the sensation that he stepped in a hole. He doesn't say there was a hole. He doesn't say he stepped in a hole. And as we can all imagine, people sometimes misstep. What was the nature of the injury he suffered? He twisted his knee and sustained an injury to his knee. That's it. And how long did that condition last? How long did the condition last? He had, I believe he had some surgical treatment. So what's your theory as to what happened? I take it you're not disputing that he was injured in some fashion. Judge, people have bad knees. He may not have even been injured at work. I can't concede that he was injured at work. People do all sorts of things that they may not even be aware of, and all of a sudden, because they engage in an activity, a normal everyday activity, they can have symptoms. And, of course, it's not the railroad's burden to prove what it is that caused his injury. In this case, we rely upon what he reported. And this whole suggestion about the snow, I want to correct something about that in the record. The railroad has rules and regulations about that. And because there is snow on the ground and there's potential for ice and slipping, they require their employees, when they walk out in those conditions, to wear cleats, which Mr. Reynolds says he was wearing. And so there's no dispute, and it was made very clear in Mr. Reynolds' testimony, that he did not slip on ice. He didn't slip on snow. He didn't slip on anything. He says he simply, as he stepped, he felt the sensation that there was a hole there, and he twisted his knee. He didn't fall to the ground. So I'm trying to answer your question as best as I can. So your suggestion is there was no causative agent with regard to the ground upon which he was walking? Exactly. And Mr. Poppe talks about, he says the current state of the law is two northern district cases from the district judges, which are not authoritative for this court. There's a case directly on point, which is the Persinski case, which we've cited to this court, which, as you recall, the Persinski case involved factually something very similar to this. There wasn't snow on the ground. It involved a sinkhole, where there's absolutely no evidence whatsoever that there was a sinkhole, or any notice to the railroad that there was a sinkhole at that location at any time previously. Whether there are sinkholes in other areas, as the appellate court ruled, it doesn't make any difference. If you can't establish notice to the railroad, either actual or constructive, then you cannot make a case. And Persinski was a summary judgment in favor of the railroad because of the very issue that we're here on today. Lack of notice. Lack of constructive notice or actual notice. So basically what we have here in the trial, Judge Lawrence did a very good job. I mean, he was confronted with what Mr. Papa, on behalf of his client, presents by way of evidence in the case. And just as he can't present any evidence from this record that he's asking you to review, Judge Lawrence, and say that Judge Lawrence was somehow mistaken in granting this summary judgment, the questions that you've all posed clearly show the same issue that everybody in this room questions. I asked Mr. Papa about the duty of the railroad to keep the area safe when the workers are going to be walking on the railroad yard, including snowfall, and you heard what he had to say. Is he correct about that? No. The railroad has the duty to provide a reasonably safe place to work. That's the duty that's defined by the law. In this case, of course, just because there's snow on the ground, a railroad operates, as you can imagine, thousands of miles of track throughout the country, all of it outdoor with the exception of when it's inside a building. They have to work 365 days a year in all sorts of weather conditions, so the mere fact that there's snow on the ground or ice on the ground or it's raining, those are not conditions that set forth some different duty to the Union Pacific Railroad. If there was a condition known to Union Pacific Railroad, for example, we had a flooded condition in an area, yes, and we're aware of that, we would have to alert our employees or maybe stop traffic in that area, but that's not what we have here. The mere fact that there's snow on the ground does not change anything as it pertains to Mr. Reynolds' accident. Are you supposed to clear the snow away from an area that he's going to be working at? No. What's the standard? Just reasonably safe or whatever? Reasonably safe, and that's why the railroad provides their employees. Mr. Pappa would say that's always a fact question whether it's reasonably safe, isn't it? I'm sorry? It's always a fact question for a jury to resolve whether something is reasonably safe. It is, but you still have to put forth the evidence as to the injury and the cause of the injury, which is that's what's missing here. We, to this day, and Mr. Pappa hasn't been able to cite to you to the record any evidence whatsoever of any hole that ever existed in this location where he claims to have fallen. Excuse me, he didn't say he fell. Where he claims to have misstepped and twisted his knee. There's just simply no evidence whatsoever in this record. And to say, well, we'd like the jury to decide this, I've asked the court to consider What if this case was before you now and in the same type of circumstances and the jury had decided against the Union Pacific Railroad? Would you be able to really say that there was evidence in this case of notice to the railroad of actual or constructive in order to uphold the verdict? Of course not. Well, in fact, there's a lot of evidence about concerns in this area. It seems to me that leaving aside that, your real complaint is there's no evidence about the cause. That the railroad, any of these problems of earlier reports, had anything to do with the cause of the injury the plaintiff suffered. Everything that he is describing of the area and prior reports have nothing to do with a hole anywhere near the location. As a matter of fact, the plaintiff cites that there were other people that reported injuries. And if you look at what those injuries are, they had nothing to do with people... Assuming for the moment that there had been a hole, he'd have a pretty good case given the circumstances preceding this. He would have a case to get himself to a jury. I would agree to that, Your Honor. If they just confound the hole, it would be a different case. I think that would at least give him a submissible case to submit to the jury on the issues of negligence. But we don't have that here. And I think Judge Lawrence gave the plaintiff every opportunity. As you see in the record, the plaintiff filed a motion to reconsider his summary judgment. Judge Lawrence considered it again. And was probably as frustrated as the three of you are as far as where is this evidence in this case to show that there are Union Pacific's negligence in any fashion, whether there was any negligence, first of all, but caused any injury to Mr. Reynolds. And there is none. And there is no notice. There is no subsequent notice. I mean, this isn't even a situation, as you pointed out, that not only is there no notice of a hole beforehand, there's no notice of a hole afterwards at any time. I think, unless the court has any questions, I think I've covered the... Okay. Thank you, Counsel. Mr. Bopp, any rebuttals, sir? Thank you, Your Honor. I found it interesting that when counsel was given the opportunity to say what the railroad did to investigate whether a hole existed there or not, what they did was exactly what Mr. Reynolds did. They went and they took pictures of the area. They did not move the snow. They didn't make any attempt to look underneath the blanket of snow to see what was there. They relied upon the blanket of snow to hide the condition. And they persisted in that. In pages 163 and 164 of this court's record, Volume 1, you'll find the incident report that was filed on the day of the accident by Mr. Reynolds. You will see how he is described on that incident report and what he reported to his superiors about what happened to him. They did nothing to verify or disprove what he reported to them. Nothing. They went and did the same thing that he had done. These men and women on the railroad are not allowed to go conducting investigations while they're on duty. They're not allowed to be on the property when they're not on duty. So his ability to investigate and prove what happened to him is quite limited. And I think that needs to be recognized. Well, counsel, again, I mean, I've tripped on things in my experience, and the normal experience is if you've tripped or slipped or whatever, you turn around and look and say, what was that? And he thought he knew why he twisted his ankle. And he looked for the hole and there was no hole. He saw snow. He did not go down and move the snow around to see what might have been underneath it. He was confident in what had happened to him and what it was. After the snow melted, did anybody go look? There's no evidence to that effect. Mr. Reynolds never returned to the property after this day, Your Honor. I don't know what the railroad may have done or not done after the day of this incident, but they didn't produce anything to us that showed us the condition of this particular location after the snow had melted. You cited to us some decisions from the federal court for the Northern District. Indeed, you began your argument that way. As you heard, Mr. Jones says this stuff is not binding upon us and has persuasive value to the extent it has any at all. Is he right? No. Those are federal substantive laws. Those are published in the federal records. So that means we have to… You are to take those into consideration in your application of what the federal law is. That wasn't my question. Are they binding upon us or are they just persuasive authority? I believe they are persuasive authority. So we can consider that as considering everything, but it's not like a decision of the Illinois Supreme Court that would be binding upon us. I agree with that. Go ahead. The reliance upon the Brzezinski case is interesting because there is quite a difference between the facts of that case and the facts of this case. In Brzezinski, the injured party was a claim agent of the railroad. A person responsible for understanding what the conditions of the yards and properties were and whether there were conditions that needed to be addressed. When he investigated claims, he's the only one that testified about the mechanism of what happened to him. No one else came out and looked. When he said, I don't know of any other instances of a way to have looked at the sinkhole, he was talking as a claim agent for the railroad. The court was persuaded by that, and the court specifically pointed out in Brzezinski that there was no other testimony from other sources to support what Brzezinski was suggesting happened. We do have support from other sources in this case. That's why this case is much different than Brzezinski. What's the support here? The support is Mr. Schultz and Mr. Rutledge acknowledging that they had preexisting conditions in the area of the yard where this happened that could explain the presence of a hole defect or some problem with the walking surfaces. And Mr. Reynolds clearly points out in a number of places in his report, he talks about a hole. He also talks about contributing factors when it was an uneven walking surface at the place where the accident happened. So we believe that that testimony plus the testimony that corroborates the potential for this condition existing because of the preexisting conditions in the yard allows this case to be considered by a jury and not by the trial court. I respect Judge Lawrence. Obviously, I thought that Judge Lawrence would reconsider his decision when I went back to him. But I don't think Judge Lawrence really appreciated the fact that there is a concept like active negligence that wouldn't require a particular notice and that this is an ideal case for him. Okay. Thank you, counsel. Thank you, Samantha. I'm advised there will be a recess until this afternoon.